O’Neall, J.,
dissenting.
In this case I shall briefly state my reasons for ruling that this bill of exchange was contaminated with usury. In tbe 6th § of tbe Act of 1812, in tbe amendment to tbe charter of the Planters’ and Mechanics’ Bank, is found the clause which it is supposed, notwithstanding the law on the subject of usury, permits the banks to sell and purchase bills of exchange at the enormous sums, which of late have been demanded. It enacts, that the Union Bank and Planters’ and Mechanics’ Bank of the City of Charleston may and they are hereby authorized whenever they shall see fit so to do, to “ discount all inland bills of exchange, which may be offered to them at the ordinary rates of exchange among merchants.” (8 Stat. 34.) I suppose this has been carried forward to all the banks, unless it be the Bank of the State of South Carolina may not have that power, for I see that bank, by its charter, is expressly confined to bills of exchange, within the State, (which I suppose are inland bills,) to one per cent, for every sixty days. Under the provision of the Act of 1812, what is meant by inland bills of exchange ? If it cannot be shown, that they mean bills on our sister States, then beyond all doubt, the practice of charging more than seven per cent, per annum, can receive no sanction from that Act. From tbe *684 3rd clause of tbe Act of 1786, 4 Stat. 741, wbicb declares sucb bills returned protested as liable to ten per cent, damages it would seem that they were considered/oragn Mils.
But waiving tbis discussion, I bold that tbe defendant here could not have been charged beyond tbe sum actually loaned. For it was not the purchase- of a bill of exchange really and Iona fide made. But it was a pretext to borrow money. Tbe bill was negotiated at one per cent, per month, to enable E. 0. Leitner, who bad made the bill in tbe name of tbe defendant, and who had also indorsed it to obtain the money. He and tbe defendant were both liable for tbe money: and in sucb a case, tbe forbearance to demand tbe money from them, wbicb is tbe legal effect of tbe bill, at one per cent, per month, makes it usury. Tbe case of Payne vs Trezevant, 2 Bay, 23, wbicb was on notes made to raise money and sold at an usurious discount, pointed out the real distinction between a loan and a sale. “ Every loan contemplated a return of tbe money at some given or fixed period; whereas a sale was an absolute irredeemable transfer for valuable consideration never to be returned.” Test tbis case by the rule thus given. Tbe bill contemplated tbe return of tbe money by tbe defendant, if tbe acceptor did not pay. That was not a sale of tbe bill. It was a discount of it at an usurious rate of interest: and that I think can have no sanction in a Court House, where tbe usury law prevails. I know it is fashionable to denounce tbe usury law, as wrong in principle, and working badly in practice: and I once entertained sucb views: but I have been convinced that I was wrong, and that an usury law, sucb an one as ours, is wise, just and proper. It protects, as all law should, tbe weak, tbe needy, and tbe improvident, from the rapacious, grasping, and exacting money lender. Bead tbe case of T. Gaillard vs. Le Seigneur and Le Roy, 2 McM 229, and tbe wisdom and necessity of an usury law will be seen.
In 2 Brev. 199, the case of Boisgerard vs. Fogartie, will be *685 found. That was on the indorsement of a note bona fide in its creation ; but it was sold by the defendant at a discount considerably above the legal interest for the time it had to run, and indorsed by him. In that case the maker was clearly liable, but the usurious discount relieved the indor-ser. That great lawyer and judge, Cheves, it will be seen, was the lawyer who made the defence, and that judge, whose name is and has been the subject of admiration in South Carolina, Judge Wilds, with the concurrence of his brethren, Bat, Teezevant and BREVARD, sustained the defence on the ground, that the indorser had forbearance, until the note was clue at a greater rate of interest than was legal. How that case can be distinguished from this, it is difficult to conceive, unless something can be found in the Act of 1812, which I do not think can legitimately affect this question.
The case of Fleming vs. Milligan, 2 McC. 173, while it ruled that a note, bona fide for valuable consideration, brought into market may be sold for less than its value, yet it, and the case of Brummer and Wife ads. John Wilkls, indorsee, 2 McC. 178, also ruled, that a note made to raise money and sold in the market, o.r an indorsement on which a greater sum than that which is allowed by law, is charged, will be usurious.
These cases, I think justify my ruling on the circuit, and I regret that a majority of the Court cannot sustain my decision. Por I believe, that it would make the banks, and people, what they ought to be, friends instead of enemies.
Munro, J., concurred

Motion refused.